**E-FILED ON** 9-7-06

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SERGIO PONCE, <br><br>  Petitioner, <br><br> v. <br><br> SILVIA GARCIA, Warden, Calipatria State Prison, THOMAS L. CAREY, Warden, California State Prison, Solano, <br><br>  Respondents. | No. C-01-21081 RMW <br><br> ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS <br><br> **[Re Docket Nos. 9, 15, 22]** |

Sergio Ponce has petitioned this court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to set aside or vacate his conviction for first degree murder. The court has reviewed all the pleadings. For the reasons set forth below, the court denies the petition.

## I. BACKGROUND

On the night of October 16, 1994, petitioner was drinking at La Hacienda bar in San Pablo, California. Reporter's Transcript ("RT") 74, 77. A mariachi band was playing in the bar and taking requests from the audience. RT 191. Petitioner and the victim, Jose Cruz Bravo, were drinking and playing dice to see who would pay the band, or who was entitled to choose songs to be played. RT 477. It is undisputed that both men had been drinking, but it remains unclear how much or for how long. At some point, petitioner and the victim got into an argument over what song should be

1  played. RT 477, 496-97, 646. A fight or a shoving match ensued, but they were separated by

2  others. RT 479-80. Shortly thereafter,[1] it appears the two exchanged more words until petitioner

3  drew out a gun and shot the victim in the chest or neck. RT 481-82. There was evidence that this

4  shot did not kill the victim and that the victim was still moving afterwards. RT 85-86, 554-558.

5  After the victim fell down, petitioner went over to the victim and said, "So, you're not paying?"

6  while making verbal insults. RT 86. Petitioner then shot the victim again in the head, killing him

7  instantly. RT 277, 279, 513, 554-58.

**A.  Evidence of Mental Capacity**

At trial, petitioner's wife, Alma Castro, testified that petitioner was "very drunk, and looked like he had been in a fight" upon returning home after the shooting. RT 366-67. According to Castro, petitioner often disappeared for over two days at a time and then came home drunk. RT 387-89. Various witnesses testified that petitioner had long been a heavy drinker, and that he was prone to violence when drunk. RT 588-89, 626, 630, 688, 692, 772-74, 795-96.

Petitioner has a history of head injuries resulting from several accidents.[2] Psychiatrist Dr. George Woods[3] examined petitioner and concluded that he suffers from mild dementia[4] caused by alcohol addiction and brain injury. RT 821. The brain injury is to the frontal lobe, which results in damage to memory, attention span, concentration and the ability to sequence events accurately. RT 821. Woods stated that people with this kind of brain disorder may not have the ability to "intend" to commit an act due to the loss of inhibition. RT 842-44.

---

[1] The amount of time elapsing between the initial fight, the separation, and the shooting is in dispute. Petitioner claims that it was all within a matter of seconds, whereas respondent asserts that several minutes had passed.

[2] That history includes (1) a 1987 auto accident; (2) a 1988 auto accident; (3) a 1988 motorcycle accident; (4) a 1989 fall; and (5) a 1994 car accident in Mexico which caused significant head injuries. RT 833-34.

[3] Woods specializes in neuropsychiatry and chemical dependency and was qualified as an expert in both areas. RT 802-13, 820.

[4] Mild dementia reflects an impairment of functioning which results in not being able to understand problems, not being able to control one's inhibitions, not being able to adapt behavior when circumstances change, and not being able to respond appropriately when faced with a new or stressful situation. RT 821.

1    Clinical psychologist Dr. Dale Watson agreed with Woods' diagnosis.  RT 1000-02, 1018-26.
2 He explained that one such effect of petitioner's frontal lobe injury could be the loss of ability to
3 react to situations based on concepts of right or wrong, depending on how powerful a stimulus is.
4 RT 1008-09.  A fight would constitute a powerful stimulus.  RT 1035.  Alcohol would adversely
5 affect this situation.  RT 1038-39.  Thus, petitioner argues that as a result of his combined brain
6 damage and intoxication, he was unable to commit premeditated, deliberate first degree murder.

7    After his arrest on November 8, 1996, petitioner was committed to Atascadero State
8 Hospital.  However, on April 11, 1997, petitioner was returned to court and certified as competent to
9 stand trial so long as he was maintained on anti-psychotic medications.  Criminal proceedings were
10 accordingly reinstated on April 18, 1997.

11 **B. Admission of Prior Crimes Evidence**

12    During petitioner's trial, Highway Patrol Officers Cheryl Smith and John Smith each testified
13 to having arrested petitioner for drunk driving twice several weeks prior to the shooting.  RT 437-55.
14 Evidence was presented that during one arrest, petitioner was stopped for speeding, not driving
15 drunk.  RT 451.  The officer testified that petitioner gave a false name and maintained that deception
16 throughout the investigative process.  RT 454, 458.  The officer further testified that petitioner's
17 blood alcohol level was tested to be at .227, yet petitioner's behavior was consistent with someone
18 who was "impaired" rather than "falling down drunk."  RT 458, 452-54.

19    Petitioner asserts now, as he objected during the trial, that this evidence was inadmissible
20 under California Evidence Code § 1101(a), which prohibits the admission of evidence of a person's
21 bad character to prove his or her conduct on a specified occasion.  First Am. Pet. at 28.  He also
22 asserted that its presentation to the jury was extremely prejudicial since it amounted to improper
23 police opinion that petitioner, even when intoxicated, could harbor the specific mental states at issue
24 in this case.  *Id.*  The trial court overruled his objections, finding the evidence relevant and
25 admissible to show (1) the effect of alcohol on petitioner "in light of the defense in this case," and
26 (2) whether petitioner was able to have "purposeful conduct" when drunk, such as giving a false
27 name, since mental state was an issue at trial.  RT 536-37.

28

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—C-01-21081 RMW
3

### C. Reference to the Polly Klaas Case

Woods testified as one of petitioner's psychiatric experts. During cross-examination, the prosecutor inquired into Woods' past forensic work for the defense in criminal cases. Woods answered questions regarding the income he generated from these cases, and about what diagnosis he found for Richard Allen Davis.[5] RT 920. The trial court sustained petitioner's objection to the prosecution's line of questioning regarding Davis. RT 921. Even so, there was a note question from Juror 13 inquiring whether the "unfair comparison" between the referenced case and petitioner's case could be addressed. RT 953. After consulting with counsel from both sides and obtaining their mutual agreement, the trial court decided that the note did not need to be addressed at that point because the case "would get off an a tangent," and the court was not "sure how to address it at this stage." RT 953.

### D. Conviction and Subsequent Proceedings

In 1997, petitioner was eventually convicted and sentenced to twenty-nine years to life. He appealed; the California Court of Appeal affirmed the judgment in an unpublished decision on June 12, 2000. *People v. Ponce*, A084500. The Supreme Court of California denied review on August 30, 2000. *People v. Ponce*, S090280. Petitioner then proceeded to federal court under 28 U.S.C. § 2254. His original petition for a writ of habeas corpus contained several unexhausted claims, and he amended it to drop certain claims.

## II. ANALYSIS

This court may entertain a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner alleges that he is in custody in violation of his constitutional rights to due process and a fair trial by jury. This court may not grant the petition with respect to any claim that was adjudicated on the merits in State court unless the State court's adjudication of the claim

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[5] Davis was the defendant in the widely-publicized Polly Klaas kidnaping and murder case in California in the year prior to petitioner's trial. *In re Willon*, 47 Cal. App. 4th 1080, 1085 (1996).

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In clarifying § 2254(d)(1), the Court specified two ways in which a state court decision can be "contrary to" established Supreme Court law:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 413 (2000). The Court also explained that a state court decision can be an "unreasonable application of federal law" either if the state court identifies the correct governing legal principle but its application of that principle to the facts of the prisoner's case is objectively unreasonable or if the state court unreasonably extends or refuses to extend a Supreme Court precedent. *Id.* The Court distinguished "incorrect" from "unreasonable" state-court decisions, recognizing that reasonable minds may differ in applying the law to the facts:

> [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 411.

Petitioner raises three claims for relief: (1) the evidence was insufficient to establish beyond a reasonable doubt that petitioner had the requisite mental state to commit first-degree murder; (2) petitioner's due process rights were violated as a result of the erroneous admission of other crimes evidence; and (3) petitioner's due process rights were violated as a result of the improper cross-examination of the petitioner's forensic expert.

Claim 1 is a question of fact governed by § 2254(d)(2). State court determinations of factual issues are presumed to be correct and petitioner has the burden of rebutting the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Claims 2 and 3 involve questions of law, which will be analyzed under § 2254(d)(1) as outlined above.

**A. Exhaustion**

The court first notes that petitioner's due process claims appear to be unexhausted. The Ninth Circuit rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. *See Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *amended by* 247 F.3d 904 (9th Cir. 2001). Respondent argues, and petitioner admits, that all arguments pertaining to the alleged improper admission of evidence and prosecutorial misconduct in witness cross-examination were presented and analyzed as state law claims at the Court of Appeal, and not federal due process claims. Ans. at 6, 11; Trav. at 7. Petitioner argues that he cited alleged due process violations in his petition for review to the California Supreme Court, but these amounted to two uses of the bare phrase "due process" in the introduction and in a subsection heading; petitioner's argument cited no federal cases or federal law, and depended entirely on state law. *See* Resp.'s Lodged Exs., Ex. F at 1, 26.

"[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996). However, as respondent points out, this court may deny a petition on the merits even if it is unexhausted. *See* 28 U.S.C. § 2254(b)(2). Moreover, it appears that requiring petitioner to exhaust his claims in state court would be futile at this stage of the proceedings. The California Supreme Court certainly would deny the claim on procedural timeliness grounds because petitioner failed to raise the federal nature of this claim on direct appeal. *See In re Clark*, 5 Cal. 4th 750 (1993). Because petitioner's claims can be denied on the merits, the court will address them.

**B. Sufficiency of the Evidence Supporting the Conviction**

Petitioner does not deny that he shot and killed the victim. However, petitioner argues that the evidence is insufficient to support a finding that the killing was premeditated or deliberate. Petitioner contends that there was no evidence of "planning activity" under *People v. Anderson*, 70 Cal. 2d 15, 26-27 (1968), and therefore that the state did not carry its burden to prove that the killing was premeditated. Petitioner further argues that the uncontradicted evidence of petitioner's brain

1  damage, history of head injuries, and alcohol abuse dictates a finding that the killing of the victim
2  was unpremeditated.
3       The Due Process Clause "protects the accused against conviction except upon proof beyond
4  a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re*
5  *Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his
6  state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find
7  guilt beyond a reasonable doubt therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S.
8  307, 321 (1979), which, if proven, entitles him to federal habeas relief. *Id.* at 324.
9       When resolving issues involving factual conclusions, a state trial or appellate court's findings
10 of fact are presumed to be correct unless they are not fairly supported by the record or the petitioner
11 can rebut them with clear and convincing evidence. *See* 28 U.S.C. § 2254(d), (e)(1). Congress used
12 the word "unreasonable" to indicate the strong presumption that a state court's determination of the
13 facts not be disturbed. *See Williams*, 529 U.S. at 411. The federal court merely determines whether
14 the state court's decision was objectively reasonable. *Id.*
15      A federal court collaterally reviewing a state court conviction does not determine whether it
16 is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d
17 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993). The federal court "determines only
18 whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier
19 of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.*
20 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt
21 beyond a reasonable doubt may the writ be granted. *See Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d
22 at 338; *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir.), *amended by* 768 F.2d 1090 (9th Cir.
23 1985); *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984).
24      If confronted by a record that supports conflicting inferences, a federal habeas court "must
25 presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any
26 such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at
27 326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v.*
28 *Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances,

1 *Jackson* does not permit a federal habeas court to revisit credibility determinations. *See id.*
2 (credibility contest between victim alleging sexual molestation and defendant vehemently denying
3 allegations of wrong doing not a basis for revisiting jury's obvious credibility determination); *see*
4 *also Guam v. McGravey*, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual
5 molestation based entirely on uncorroborated testimony of victim).

6      *Anderson* lists three types of evidence that are generally relevant to establishing
7 premeditation: evidence of "planning" activity by defendant prior to the killing, evidence of
8 "motive" from defendant's past relationship with or conduct towards the victim, and evidence that
9 the "manner" of the killing was "so particular and exacting" that a jury could infer that the defendant
10 intentionally killed the victim according to a "preconceived design." 70 Cal. 2d at 26-27. Petitioner
11 admits that the factors listed in *Anderson* for determining premeditation are "guidelines" that "do not
12 constitute a rigid list of prerequisites for proving premeditation and deliberation in every case."
13 First Am. Pet. at 23. "The *Anderson* analysis was intended as a framework to assist reviewing courts
14 in assessing whether the evidence supports an inference that the killing resulted from preexisting
15 reflection and weighing of considerations." *People v. Thomas*, 2 Cal. 4th 489, 517 (1992). Even if
16 the court were to agree that there was no "planning" evidence as defined in *Anderson*, there is clear
17 evidence in the record of motive (the dispute over the mariachi band), and evidence that the manner
18 of killing was "particular and exacting" (a single shot delivered at close range to the head of the
19 already-fallen victim, together with an expression that suggested revenge). *See Thomas*, 2 Cal. 4th
20 at 518 (single close range shots to the head considered sufficiently "particular and exacting" to
21 suggest premeditated killings, notwithstanding evidence that killings were done in a rage). This
22 evidence alone would support the jury's conclusion under *Anderson*. However, in any event, the
23 court disagrees that there was *no* evidence of "planning" on petitioner's part; the record indicates that
24 *after* the fight between petitioner and the victim was stopped, petitioner drew his gun. It would not
25 be unreasonable to infer that petitioner made a calculated decision to kill the victim at that point.

26      Petitioner disputes the Court of Appeal's characterization of the evidence in this case,
27 arguing that there was evidence to indicate that the fight between petitioner and the victim was never
28 really broken up and that events unfolded too quickly to allow for premeditation. However, the fact

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—C-01-21081 RMW

1  that there was conflicting evidence at trial is insufficient to constitute a due process violation unless
2  the evidence supporting the conclusion that the killing was premeditated was insufficient for *any*
3  rational trier of fact to reach that conclusion.  That is simply not the case here.  There was evidence
4  of a fight between petitioner and the victim; there was evidence that the fight was broken up; there
5  was evidence that petitioner pulled out his gun after the fight was broken up; there was evidence that
6  petitioner, having shot the victim at least once in the chest, leaned down and shot the victim again as
7  he lay on the floor helpless; and there was evidence that petitioner spoke words suggesting that he
8  deliberately killed the victim as result of their dispute.  Furthermore, with regard to the claim that
9  the sequence of events was too brief to allow for premeditation, the California Supreme Court has
10 held that "[t]he process of premeditation and deliberation does not require any extended period of
11 time."  *People v. Mayfield*, 14 Cal. 4th 668, 767 (1997).  "[S]tate courts are the ultimate expositors
12 of state law."  *Mullaney v. Wilbur*, 421, U.S. 684, 691 (1975).  This court cannot overturn the jury's
13 resolution of the conflicting evidence in this case.

14         With regard to the evidence concerning brain damage and alcoholism, such evidence, even if
15 uncontradicted, does not defeat a jury finding of premeditation as a matter of law.  The California
16 Supreme Court has stated that an expert's post-trial declarations concerning defendant's brain
17 damage "do not *eliminate* or *negate* [other] evidence [of premeditation] . . . Even if unrebutted by
18 prosecution experts, they merely sharpen the existing dispute about defendant's state of mind."
19 *People v. Gonzalez*, 51 Cal. 3d 1179, 1247 (1990).  In this case, expert testimony concerning
20 petitioner's possible brain damage was presented to the jury, and the jury evidently chose to
21 disregard it in light of the other substantial evidence that supported a finding of premeditation, as
22 detailed above.  This court cannot second-guess the jury's evaluation of the evidence at trial, and
23 denies the petition as to the sufficiency of the evidence claim.

24 **C. The Admission of Other Crimes Evidence**

25         A person in custody pursuant to the judgment of a state court can obtain a federal writ of
26 habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or
27 treaties of the United States. 28 U.S.C. § 2254(a).  "A violation of state evidence rules is
28 insufficient to constitute a due process violation."  *Randolph v. California*, 380 F.3d 1133, 1147 (9th

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—C-01-21081 RMW

Cir. 2004); *see Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Rather, this court must determine "whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process." *Randolph*, 380 F.3d at 1147. In order to grant relief, a federal habeas court must find that the absence of fairness fatally infected the trial; the acts complained of must be of such quality that they necessarily prevented a fair trial. *Id.*

In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension *and* that it was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). He would have to show that the error had "'a substantial and injurious effect' on the verdict.'" *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (*quoting Brecht*, 507 U.S. at 623).

The fact that prior bad acts evidence may have been improperly admitted under California Evidence Code § 1101(a), standing alone, is not sufficient for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (rejecting the Ninth Circuit's reliance on conclusion that evidence was "incorrectly admitted . . . pursuant to California law" as a basis for federal habeas corpus relief). As respondent points out, the admission of evidence regarding petitioner's previous drunk-driving arrests would not have been a violation of federal evidentiary rules. Federal Rule of Evidence 404(b) provides that evidence of prior bad acts "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The effect of alcohol on petitioner's mental state was an issue at trial.

Petitioner asserts that the inference that he was in control of his behavior during the barroom shooting based on the fact that he appeared to be in control during the prior drunk driving arrests was "speculative" and "illogical . . . given the profound dissimilarities between the shooting and the prior arrests." First Am. Pet. at 32. The court does not agree. Contrary to petitioner's assertions, the evidence presented was relevant to establishing that petitioner was able to function intentionally even while heavily intoxicated.

The risk of prejudice to petitioner as a result of this evidence was also minimal; it is unlikely any reasonable jury would have convicted petitioner of first-degree murder solely on the basis of two past drunk driving arrests. The jury instructions properly limited the use of the admitted

1  evidence to prove that petitioner was capable of forming the requisite intent for first-degree murder.
2  *See* RT 1281-82.  The court therefore does not agree that the evidence of prior bad acts was either
3  irrelevant or so prejudicial as to render the trial fundamentally unfair to petitioner, and denies the
4  petition with respect to this claim.

**D. Cross-Examination of Petitioner's Forensic Expert**

Petitioner claims that his due process rights were violated as a result of irrelevant and inflammatory cross-examination of Woods, the petitioner's forensic expert at trial.  Petitioner's claim has two elements: (1) the prosecution made two irrelevant and prejudicial references to Woods' role as a defense witness at the trial of Richard Allen Davis, and (2) petitioner was prejudiced by the trial court's failure to respond to a juror note asking about the Davis case.

Improper questioning of a witness by the prosecutor is not alone sufficient to warrant reversal.  Rather, the relevant inquiry in the context of a habeas corpus petition is dictated by *Darden v. Wainwright*, 477 U.S. 168, 181 (1986): whether the prosecutor's behavior so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *See Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The record in this case does not indicate that petitioner's trial was fundamentally unfair.

With respect to the allegedly inflammatory references to Davis's trial, neither of the two references to Davis invited any direct comparison with petitioner.  RT 915, 920-21.  Furthermore, the trial court immediately sustained a defense objection after the second reference and stated, "I don't want to get into that case."  RT 921.  Petitioner argues that the references to the Davis case were prejudicial because they prompted a juror to send a note to the trial judge asking that the "unfair comparison" between the Davis case and petitioner's case be "addressed."  RT 953.  However, if anything, the note indicates that the references to the Davis case were not actually prejudicial (even if they were misconduct) because the juror recognized that any comparison would have been unfair.

Petitioner also argues that the trial court had a duty under California Penal Code § 1138 to respond to the juror's question, and therefore the failure to respond itself was error denying due process.  However, under federal law, a trial judge's response to a question from the jury is reviewed

for abuse of discretion.  *See United States v. Romero-Avila*, 210 F.3d 1017, 1024 (9th Cir. 2000).  In this case, both sides agreed with the trial judge that the juror's note should not be addressed.  RT 953.  As noted above, the trial court immediately sustained the defense's objection to the repeated reference to the Davis case, and explicitly indicated that further reference to the Davis case was not relevant.  Petitioner does not point to any deficiency in the jury instructions, nor is any evident from the record.  Therefore, the court finds there was no abuse of discretion in not responding to the juror's query, nor were the proceedings fundamentally unfair.  The writ is denied as to this claim.

### III.  ORDER

For the reasons above, Sergio Ponce's petition for writ of habeas corpus is denied.

DATED:   9/7/06

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

1  **Notice of this document was electronically sent on** _9-7-06_ **to:**

2  **Counsel for Plaintiff:**

3  Colleen M. Rohan          crohan@attglobal.net

4  **Counsel for Defendants:**

5  Morris Beatus[6]          morris.beatus@doj.ca.gov

7  **A copy of this order was also mailed on** _____ **to:**

8  **Counsel for Petitioner:**

9  Colleen M. Rohan
   1442A Walnut Street, P.M.B. No. 45
10 Berkeley, CA 94709

11 **Petitioner:**

12 Sergio Ponce, P-13400
   CSP-Solano, 12-215
13 P.O. Box 4000
   Vacaville, CA 95696-4000

14 **Counsel for Respondent:**

15
   Bill Lockyer; Robert R. Anderson; Gerald A. Engler; Gregory A. Ott; Peggy Ruffra
16 455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102

19 Counsel are responsible for distributing copies of this order to co-counsel, as necessary.

---

28  [6] The court is aware that the attorney primarily responsible for representing respondents was elevated to the Alameda County Superior Court over a year ago.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—C-01-21081 RMW
13